on the day calendar, Board of Education versus A.D. and N.D. You didn't reserve any time. Mr. Rushfield. Thank you, Your Honor. May it please the Court, my name is Mark Rushfield. I represent the appellant, Maronick Central School District, in this matter. This case involves, as the lower court noted, basically two issues. One of those issues actually goes to the subject matter jurisdiction of the faculty state review officer and of the courts to determine whether a claim outside a due process complaint can be adjudicated by the state review officer, partial hearing officer, and by the courts. The first issue relates to the due process complaint, which acknowledged that the IEP in this case provided for counseling support. That's at page 271 of the appendix, which is the page of the due process complaint. That due process complaint also noted that the dispute that was being raised was not about whether the counseling support recommendation was specific enough or where it was located in the IEP, because in this case we have a place where it wasn't referenced where it should have been, and it didn't have details in terms of frequency of a single counseling session or how long that would last. But the complaint in this case, the due process complaint, wasn't about those issues. It was about whether, in terms of the due process complaint, a complaint that there was too small an amount of counseling. The SRO found that nonetheless, by the school district in its opening statement, going into the defense of that claim about there being too small an amount of counseling, going within the district that had opened the door to the student claiming that, in fact, contrary to the language of their own due process complaint, there was no counseling support component at all. The secondary issue is even if the doors opened, which, again, is a search matter jurisdiction issue, the issue becomes, well, was the counseling support referenced in the due process complaint and the IEP was all about, whether explaining that and giving what the details were is retrospective testimony. It's our position, as I'll expound upon to the extent permitted, that it's not retrospective testimony, virtually by definition, under the decisions of this court. Remind me what the standard of review for us on that point is. De novo, Your Honor. These are issues of law. Facts are not in dispute. They're all in the record before the SRO and the IEP. It's a lucky thing because this is the, I don't know anything quite like it when it comes to facts. We defer to the district court that defers to the state hearing officer that defers to the hearing officer. I've never heard, you know, God knows what happens if it ever gets to the Supreme Court. Well, this, Your Honor, relates to errors of law. Errors of law are de novo review. Oh, understood. I'm just expressing my gratitude. Go ahead. Well, you're welcome, Your Honor. And the background to this case is interesting because it really leads to where this court's conclusion, I think, should be. We had here a situation with a student who was a young teenager diagnosed with attention deficit disorder. He's brand new to special education. His parents, in fact, at the CSE meeting held on June 24, 2014, are arguing that he shouldn't be classified at all. The school psychologist, Dr. Anand, presses for his classification. And the parents make clear to the CSE that this is a student who's not going to cooperate. He's going to resist. He's going to, because he's concerned, and I understand that being a father and a grandfather, he's concerned about the potential, quote, stigma, close quote, that can attach to a student who's receiving special education services. I won't go back to the kind of references we had when I was a kid to kids who were deemed special education, but I understand the stigma that can attach certainly in the mind of a 13-year-old student. So there's discussion during these meetings about holding counseling sessions with the student weekly. But it becomes clear during this meeting that that's not going to work because we have this student who's going to resist. So as Dr. Anand explained in her testimony, it's going to have to be a flexible approach. And that approach is going to be, you know, Dr. Anand's going to be dealing with the various teachers involved, how should they deal with the student. And she does say in her testimony that, well, I'll be meeting, I will meet with him once a month for an hour. That assumes, of course, that he'll agree to do it. And she explains that that recommendation, this flexible approach, was consistent with the recommendation made by the students, or the parents hired, psychologist, who had stated in a community, a writing, that, you know, if the student was to remain at the district school, he may be greatly aided, this is a quote, he may be greatly aided by meetings with the school counselor and or school psychologist to monitor his emotional reactivity and well-being. That's at page 312 of the appendix. Anyway, the parents reject the IEP and they send the student, you know, they place the student at a boarding school in Idaho. And then they, through their due process complaint, they seek that the school district pay for the cost of the student's education. For that 2014-2015 school year at that school in Idaho. So the record also reflects that the parents declined to take advantage of the resolution period provided by law. Because they declined to return for a reconstituting of the Committee of Special Education. They never bring to the attention of the school district or the Committee of Special Education that they are now claiming, at some point claiming, that there was actually no counseling support. They don't even tell them that the counseling support was inadequate. They just never communicate that they have an objection to that in the IEP. So then we get, as I've mentioned, the due process complaint is filed. No issue about there being counseling support. Opening statement by counsel from my office at the hearings before the impartial hearing officer. He's required, as we know, to defend the IEP and the services that are being offered. Especially since they're claiming one of those services, the counseling service, is inadequate because it's too small an amount. So he mentions in his opening that, that there was a counseling support recommendation made in order to reflect the sensitivity to the student's desire to not appear different from other students. And they mention that they recommend, well, they say where it is. It's noted only in the comments section, which honestly is not where it's supposed to only be. And then he says it's clerical error. And that's pretty much what his opening is on the subject. Counsel for the parents then takes the position that the IEP provides for no counseling support services whatsoever. It's an interesting point they make there because, in fact, they themselves mention that there's counseling support. At the hearing there's evidence put in about what the counseling support was by Dr. Annan. There was some confusion by Dr. Minani, who eventually says, I don't really recall what was discussed at the meeting. Aisho decides in favor of the district. SRO reverses because he says, you don't have other contemporaneous evidence. In terms of the opening the door issue, under RE, the parents were precluded from raising additional defects. We submit that the door is not opened by what Attorney Severa said or by going into the evidence that you have to establish to support the IEP. And there's no strategic advantage. Districts are required to support the IEP through literally that presentation of, this is the counseling support we provided. So, you know, if the purpose is to avoid us being sandbagged, district being sandbagged and treated unfairly, we were sandbagged and treated unfairly. I'm running out of time. So RE talks about the four corners rule. There is no rigid four corners rule. And in FL versus the New York State Department of Education, in other cases, if I may just finish my point, this court has stated that if it's listed, if it's in the IEP, it's acknowledged it's in the IEP, then merely explaining how the service that's, quote, listed, close quote, in the IEP is provided is not retrospective testimony. And in FL, in the footnote two, they note that you don't need to have, you know, the issue isn't whether there's contemporaneous evidence to support it because the court distinguished cases in which there was contemporaneous evidence. Thank you. Mr. Cutler. Good afternoon. My name is Jesse Cutler, and I'm here today on behalf of AD, ND, and their child, JD. The school district was on notice that the parents believed the counseling support contained within the IEP was insufficient from the first filing by the parents to the school district in August of 2014. There was a request for additional information from the school district that came in on September the 5th of 2014, asking that the parents further elaborate upon their concerns. And the parents responded on September 12th of 2014 and informed the school district's chairperson, Dr. Minotti, that the only special education service that was contained in the student's IEP was the daily resource room program. That writing occurs at page 391 of the appendix. Thereafter, in mid-September, late September, the school district offered for the first time to reconvene the Committee on Special Education and to reconsider any concerns that the parent had or any additional services that the student may or may not need. However, there was no additional evaluative material, no additional information that anybody had about the student that was not available in June of 2014 when the committee had first met. Thereafter, the parents filed a due process complaint. In that due process complaint that was filed that initiated the impartial hearing and the appeal that we're before you now, the parents claimed that the counseling support services were not sufficient to address the student's needs. During his opening statement, counsel for the school district stated that the IEP provided for the related service of counseling that the Committee on Special Education would have provided for the child. This was objected to during the opening statement for the parents. And then the school district presented testimony from three different witnesses, three different school district employees who had participated in the IEP meeting about what the student's special education program would have ostensibly looked like had he attended the district's program. Each of those witnesses was unable to refer to the IEP to identify what the counseling services would have actually been, and each of those witnesses had a different understanding of what those services would have been. Dr. Minotti testified that he believed that it was a very minimal level of services, that he believed it may have been once per week of direct service between the school district psychologist and the child. There was some sort of clerical error, right? The school district has claimed that it was a clerical error that resulted in the specifics, that is the frequency, the duration, the intensity of the special education service to be provided to the child. With what effect? With what effect? The clerical error. The clerical error is that the school district claims it was a clerical error to not identify the fact that the child would be receiving counseling services as a direct service or as an indirect service. Whether it was a consultative service, which Ms. Anon testified, she was not actually going to be working directly with the child. Rather, she would be working with school staff to see what she could do to assist them to assist the student. The testimony of Dr. Minotti, that there would have been a weekly, once per week, counseling session with the student. And the testimony of the student's guidance counselor from the prior school year, who said he believed that it was through Cecilia Anon. I can't believe if it was weekly, every, I don't remember the extent of it, but it was through Cecilia Anon. Cecilia Anon testified that it was merely a psychological consultation once monthly for an hour, she believed. And that was at page 202 of the appendix. Dr. Minotti at page 210, that it was maybe once a week for 30 minutes. And Mr. Nelson, the guidance counselor, testified at page 187 of the appendix. He couldn't recall, he believed it may have been once weekly. So what that did is it left the parents and the school district personnel with no idea of what level of therapeutic support the student would have received. The parents, when they received the IEP document, All that they knew was that he would receive resource room services once per day, one period per day, in a small group of approximately four students. This was almost identical to the at-risk services that the school district had been providing to the child during the prior year, and which had proved to be insufficient to address his needs. So the parents raised this concern to this district. They provided the appropriate and required regulatory notice to the school district that they were withdrawing the child because they did not believe that the program offered to them in writing, in that IEP, by the school district was appropriate to address the child's needs. The school district, six, 11 days later, said to them, well, tell us more about your concerns. The parents wrote back and said, all that you gave him was resource room. He's had this before. It's not appropriate to address his needs. He needs more than that. And then the district's director of special education didn't reconvene an IEP meeting, which is what the regulation says that the school district is supposed to do. It says that the 10-day notice provides the school district with the opportunity to reconvene an IEP team and to address those concerns. He, the school district's director of special education, instead scheduled a meeting with the parents, and they sat down and they discussed this. And the parents shared with him that they were concerned that the only support that was provided for the child was resource room. The school district then, we went to hearing, and at some point in the hearing, they were asked on direct examination about how it is that there was no counseling support provided. And they said that they thought it was a clerical error. And they said that they had referred back to the minutes. Dr. Minotti said, I referred back to the minutes, and it was once weekly. Those minutes were never entered into the record at the hearing, before the state review officer, or in the district court when they had the opportunity to supplement the record and provide additional information. Ms. Anand, the school district psychologist, testified that she thought that it was a different recommendation. Again, nothing was ever provided. No corrected IEP was provided. No minutes were provided. Nothing contemporaneous established what it is that the district- Who was supposed to provide that exactly? The school district, if it had that information, had the opportunity to present that into the record. The parents were not provided with anything other than a writing from the school district that said, we will provide your child with resource room services once per day. We will provide- there was a comment that said that the child requires counseling support. This is not like any of the cases cited by the school district in its argument here today, which were all cited in its brief, and which we explained. None of these cases that is relied upon by the school district supports the proposition that a school district can blanketly say, we'll provide some level of support, and then come to hearing and provide testimony from three different witnesses who don't have a clear recollection of what it is that the child would have received, and who have a differing understanding of what that support would receive. The parents have to rely upon the IEP. That's what the case law makes clear. That's why federal law says that the school district is legally required to inform the parents of the frequency, the duration, and the intensity of the special education services that are to be provided to the child, so that parents can rely upon that and make a determination about whether it is sufficient or appropriate to address their child's- Bless you. To address their child's individualized special education needs. The parents were clear. He needed more than the resource room that they understood the school district was recommending for him. There is never anything in writing from the district that said, we will provide direct service to your child. We will provide indirect service to your child. We will provide consultative services to your child. It simply said, we are going to provide him with resource room services at this frequency and at this duration. Comments? Sure. But that's not what these other cases deal with. All of the other cases that have been cited by the school district consist of cases where a child was receiving special education services year over year. And there was an understanding between the parents and the family about those services. Or where the IEP identified the specifics of the services to be provided to the child at some place other than exactly where it's supposed to. That didn't happen here. The IEP is silent as to the type of support that needs to be provided with. The school district, I didn't want to cut you off, I'm sorry. Were you asking a question? Okay. The school district is asking that this panel, that you rely upon an impartial hearing officer's decision that is premised on a specific counseling service. And a specific counseling mandate actually being provided to the child. The impartial hearing officer didn't grapple with the evidence. He didn't look at the contrary evidence from the other two witnesses from the school district that had a different recollection than Ms. Anand did. In fact, he says that it relied upon, I'm sorry, the impartial hearing officer's decision relies upon the school district providing a psychological consultation as well as direct services to the child. Which was not testified to by the school district witness that he relies upon. The state review officer considered all of this, considered the testimony of the different witnesses that the school district presented on direct. And found that the school district had failed to identify the services consistent with the law. And that there was insufficient support that it would have provided the child with appropriate services, given the lack of specificity on the IEP, given the fact that the school district presented testimony that tried to rehabilitate the deficient IEP. And it was constrained from doing so under the holdings of this court and federal law. If there are any questions, I'm happy to answer them. Otherwise, I thank you for your time. Mr. Rushfield. Thank you, Your Honor. I reiterate at page 271 of the appendix, due process complaint from parents' counsel. The CSE review team recommended a program of resource room in a group of five for 45 minutes per day, as well as counseling support and classroom modifications. So obviously they knew there was a classroom support component. This position that there was inconsistent testimony, there were three witnesses who testified. One in great detail, Dr. Anand, who designed the program. And two others who each said they didn't recall the specifics of the program at all. Dr. Manati did not refer to the minutes of the program. He said he would have to refer to minutes of the meeting. But he did not refer to minutes of the meeting. Counsel has acknowledged that they never raised these disputed issues concerning either where the counseling support is located or its lack of specificity in the due process complaint. And it wasn't raised in a way of opening the door. And so consequently, since this is only testimony to explain what the program was designed to do for this student who was going to resist it, it's not retroactive testimony. These are all legal issues based upon the record in the case. And I think the court is fully capable of addressing those issues based on the record. Thank you. Thanks very much. We'll reserve the decision and we're adjourned.